LORINDA I. LARYEA
ACTING CHIEF, FRAUD SECTION
KYLE CRAWFORD, D.C. BAR NO. 888241455
JOHN J. LIOLOS, NEW YORK STATE BAR NO. 5331053
TRIAL ATTORNEYS
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE
1400 NEW YORK AVENUE, N.W.
WASHINGTON, D.C. 20005
TELEPHONE: (202) 794-4010
TELEPHONE: (202) 768-2246

JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ACTING UNITED STATES ATTORNEY
SEAN M. MAZOROL, DISTRICT OF COLUMBIA BAR NO. 90025737
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE STREET, SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL SMITH,<br><br>Defendant. | Case No.<br><br>**INFORMATION**<br><br>15 U.S.C. § 78j(b)<br>15 U.S.C. § 78ff(a)<br>17 C.F.R. § 240.10b-5<br><br>18 U.S.C. § 981(a)(1)(C)<br>28 U.S.C. § 2461(c) |

The United States charges:

1

## GENERAL ALLEGATIONS

At times relevant to this Information:

### Relevant Individuals and Entities

1. Defendant MICHAEL SMITH was a resident of Idaho. In or around June 2019, MICHAEL SMITH joined Company-1 as its Executive Vice President, Product Division. In or around June 2022, MICHAEL SMITH was promoted to the role of President and Chief Operating Officer.

2. Company-1 was based in Idaho. Company-1's shares were publicly traded on the Nasdaq stock exchange, which is a national securities exchange.

3. Individual-A was a resident of Idaho. MICHAEL SMITH and Individual-A had a close personal relationship.

## COUNT ONE

### Securities Fraud
### 15 U.S.C. §§ 78j(b) & 78ff(a); 17 C.F.R. §§ 240.10b-5

4. Paragraphs 1 through 3 of this Information are realleged and incorporated by reference as though fully set forth herein.

From at least in or around July 2024 through at least in or around August 2024, in the District of Idaho, and elsewhere, Defendant **MICHAEL SMITH,** did knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and facilities of national securities exchanges, in connection with the purchase and sale of securities, use and employ, and cause others to use and employ, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing, and causing others to employ, devices, schemes, and artifices to defraud; and (b) engaging, and causing others

to engage, in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit: on the basis of material, non-public information obtained from his employer, Defendant MICHAEL SMITH executed and caused to be executed trades in the securities of Company-1, including on or about July 26, 2024. In violation of 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §§ 240.10b-5.

### MANNER AND MEANS OF THE INSIDER TRADING SCHEME

5.  In or around May 2024, Company-2 contacted Company-1 to express its interest in acquiring Company-1. From in or around early May 2024 until on or about August 7, 2024, when Company-1 and Company-2 executed an acquisition agreement, Company-1 and Company-2 engaged in nonpublic discussions regarding the acquisition of Company-1.

6.  By at least June 2024, by virtue of his role at Company-1, MICHAEL SMITH received material nonpublic information ("MNPI") regarding the impending acquisition of Company-1. MICHAEL SMITH owed a fiduciary duty and duty of trust and confidence to Company-1 and its shareholders to refrain from trading in its securities based on MNPI that he received because of his employment at Company-1.

7.  As a Company-1 employee, MICHAEL SMITH was subject to the Company's Insider Trading Policy that, among other things, prohibited employees from trading in Company-1's securities if an employee had MNPI regarding Company-1. The Policy also prohibited employees from disclosing MNPI to anyone outside the Company. In addition, on or about June 3, 2024, Company-1 notified MICHAEL SMITH and others of a trading blackout period, and that between June 17, 2024 and the close of market on August 9, 2024: "you, and any entity you directly or indirectly control may not execute transactions in the Company's securities."

8.  On or about July 26, 2024, MICHAEL SMITH went to Individual-A's residence.

MICHAEL SMITH volunteered to help Individual-A with stock purchases. Individual-A logged into Individual-A's stock brokerage account, and then MICHAEL SMITH purchased approximately 17,255 Company-1 shares for approximately $379,125.53 at an average price of approximately $21.97 per share in two of Individual-A's accounts. Before July 26, 2024, Individual-A held approximately 9,000 shares of Company-1. MICHAEL SMITH executed these trades on the basis of MNPI about the impending acquisition of Company-1 despite knowing that he was prohibited from trading Company-1 stock.

9. On or about August 7, 2024, Company-1 and Company-2 issued a press release announcing that "[Company-1] entered into a definitive agreement . . . pursuant to which [Company-2] will acquire all of the outstanding shares of [Company-1's] common stock for $31.00 per share, in an all-cash transaction valued at approximately $1.5 billion." After the news became public, Company-1's stock price increased 48% from the previous day's price.

10. On or about August 8, 2024, after Company-1's stock price had increased significantly because of the announcement of Company-1's acquisition, MICHAEL SMITH went to Individual-A's residence. Individual-A logged into Individual-A's stock brokerage account, and MICHAEL SMITH then sold approximately 26,255 Company-1 shares at an average price of approximately $30.42 per share for approximately $798,651.13 in Individual-A's accounts. The shares sold included all the Company-1 shares purchased on or about July 26, 2024 and 9,000 shares purchased previously.

11. Accounting only for the profits obtained from the Company-1 shares MICHAEL SMITH purchased on or about July 26, 2024, in Individual-A's investment account, MICHAEL SMITH generated approximately $145,754.69 in trading profits by trading on Company-1 MNPI.

12. MICHAEL SMITH executed the above-described trades to financially benefit

Individual-A, not for his personal financial gain. The above-described trades were executed using an instrumentality of interstate commerce, and the trades also used a facility of a national securities exchange.

## CRIMINAL FORFEITURE ALLEGATIONS

### Fraud Forfeiture
### 18 U.S.C. § 981(a)(1)(C)/ 28 U.S.C. § 2461(c)

Upon conviction of the offense alleged in Count One of this Information, the Defendant, MICHAEL SMITH, shall forfeit to the United States any and all property, real and personal, tangible and intangible, consisting or derived from any proceeds the said Defendant obtained directly or indirectly as a result of the foregoing offenses. The property to be forfeited includes, but is not limited to, the following:

1. <u>Unrecovered Cash Proceeds and/or Facilitating Property.</u> The Defendant obtained and controlled unrecovered proceeds of the offense of conviction, or property derived from or traceable to such proceeds, and property the Defendant used to facilitate the offense (if facilitation is alleged), but based upon actions of the Defendant, the property was transferred, diminished, comingled, or is otherwise unavailable. The defendant obtained and controlled at least $145,754.69 in unrecovered forfeitable property:

2. <u>Substitute Assets.</u> Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the government will seek forfeiture of substitute assets, "or any other property of the Defendant" up to the value of the Defendant's assets subject to forfeiture. The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred or sold to, or deposited with, a third person;

   c. Has been placed beyond the jurisdiction of the court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be subdivided without difficulty.

Dated this 18th day of September 2025.

| | |
|---|---|
| LORINDA I. LARYEA | JUSTIN D. WHATCOTT |
| Acting Chief, Fraud Section<br>Criminal Division<br>U.S. Department of Justice | ACTING UNITED STATES ATTORNEY<br>District of Idaho |
| By: | By: |
| */s/ Kyle Crawford for*<br>KYLE CRAWFORD<br>JOHN LIOLOS<br>Trial Attorneys | */s/ Sean M. Mazorol*<br>SEAN M. MAZOROL<br>Assistant United States Attorney |